```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS


OLIVER M. BOLING,

                    Petitioner,

          v.                              CASE NO. 04-3078-RDR

R. MUNDT, et al.,

                    Respondents.
```

## MEMORANDUM AND ORDER

Petitioner proceeds pro se and in forma pauperis on a petition for a writ of habeas corpus under 28 U.S.C. § 2241, filed while petitioner was incarcerated in the United States Penitentiary in Leavenworth, Kansas.[1]

### Background

Petitioner was convicted in the District of Columbia of sodomy in 1976 and assault with a dangerous weapon in 1983. He was sentenced to a controlling prison term of 23 years and 8 months to 71 years and 6 months. By a Certificate of Parole issued by the D.C. Board of Parole ("D.C. Board") on July 27, 1998, petitioner was released on parole in February 1999, subject to supervision until June 29, 2047.

---

[1] Petitioner is currently incarcerated in a federal facility in Lewisburg, Pennsylvania. Following his transfer to the Pennsylvania facility, petitioner filed a § 2241 petition in the United States District Court for the Middle District of Pennsylvania in 2005, alleging error in the revocation of his parole by the D.C. Parole Board in 2000. That court denied the petition on the merits, and petitioner's appeal is currently pending before the Third Circuit Court of Appeals. See Boling v. Smith, Case No. 05-0918-EMK-LQ (M.D.Pa. October 13, 2005), *Appeal No. 05-4920 pending*.

Shortly after his release, he was arrested in the District of Columbia and charged with domestic assault for hitting his wife with his fists and assaulting her with a cane.[2] The D.C. Board issued a parole violation warrant on April 13, 1999, based on this assaultive behavior and petitioner's failure to abide by all laws.

Meanwhile, petitioner's wife obtained a temporary protective order and fled to Connecticut. In April 1999 Connecticut police officers arrested petitioner on charges of violating a restraining order, criminal trespassing, and stalking. The latter two charges were dismissed, and petitioner was convicted of violating a protective order and disorderly conduct. Upon completion of his Connecticut sentence, the United States Marshal Service returned petitioner to the District of Columbia in February 2000 pursuant to the D.C. Board's parole violation warrant.

The D.C. Board revoked petitioner's parole in July 2000, and set a hearing date for parole reconsideration in three years.[3] Petitioner was subsequently transferred to the custody of the Bureau of Prisons in July 2001.[4]

---

[2]The District of Columbia criminal assault charge was subsequently dismissed.

[3]Although petitioner characterizes this three year "set-off" date as the maximum punishment for his infractions, the District of Columbia Board guideline ranges used at revocation hearings provided a time frame for when a prisoner is entitled to a re-parole hearing, and did not suggest an actual date of re-parole. See Allston v. Gaines, 158 F.Supp.2d 76, 82-83 (D.D.C. 2001).

[4]See National Capital Revitalization and Self-Government Improvement Act of 1997, Publ. L. No. 105-33, § 11231(A)(1), 111 Stat. 712, 745 (eff. August 5, 1998); D.C. Code § 24-131. Sole authority over parole release decisions regarding D.C. Code felony offenders convicted in D.C. Superior Court transferred to the Commission effective August 5, 1998. Id.; D.C. Code § 24-131(a)(2) (2001). Transfer of the authority to revoke parole, issue warrants and other remaining powers, duties and jurisdiction to the

In December 2003 the United States Parole Commission ("Commission") conducted a hearing and issued a Notice of Action dated December 19, 2003, to continue petitioner's confinement until a presumptive re-parole date of April 9, 2005.[5] The Commission rated petitioner's parole violation offense behavior as criminal conduct of Category Five severity because it involved assault with a dangerous weapon, and set petitioner's salient factor score as 5. The Commission noted petitioner's felony assault of a female victim within two months of his release on parole, and his continued involvement in felony violence while on parole for prior crimes of violence. The Commission found petitioner presented a more serious risk than indicated by the guidelines of returning to violent criminal activity when released to the community, and set a 72 month reconsideration date beyond the guideline range of 48-60 months.

Alleging error in the Commission's 2003 decision, petitioner filed the instant action claiming the Commission's failure to apply the D.C. law in effect when he committed his crimes violated the Ex Post Facto Clause. Second, he claims the Commission abused its discretion and denied him due process by departing from its guidelines without good cause or a rational basis for the departure. Third, he claims the Commission unlawfully relied on the same factors to establish petitioner's range under the guidelines and then to depart from the guidelines. He asks the court to vacate the presumptive parole date in the Commission's Notice of Action dated

---

Commission occurred two years later.  Id.

[5]Petitioner mis-characterizes this action as a revocation of his parole, and consistently maintains he was "granted parole" as of April 9, 2005.

December 19, 2003, and to order a new hearing.

As documented in the record, the Commission notified petitioner in June 2004 that it was reopening petitioner's case pursuant to 28 C.F.R. § 2.28(f) due to the discovery of new and significant adverse information not considered by the Commission in their 2003 decision to set a 72 month departure presumptive re-parole date.  The new material included information describing petitioner's abuse against his wife, attempts on her life, threats to kill her and members of her family, and violations of the protective order.  After conducting a special reconsideration hearing on November 30, 2004, the Commission issued a Notice of Action dated January 5, 2005 which voided the Notice of Action dated December 19, 2003, and continued petitioner to a reconsideration hearing in December 2018 after fifteen years.

## Standard of Review

The standard of review in a habeas corpus action of a federal parole determination is quite limited.  Fiumara v. O'Brien, 889 F.2d 254, 257 (10th Cir. 1989), *cert. denied*, 495 U.S. 958 (1990).  The court will not overturn a decision by the Commission "unless there is a clear showing of arbitrary and capricious action or an abuse of discretion."  Sotelo v. Hadden, 721 F.2d 700, 702 (10th Cir. 1983)(*citing* Dye v. United States Parole Comm'n, 558 F.2d 1376, 1378 (10th Cir. 1977)).  "The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons."  Misasi v. United States Parole Comm'n, 835 F.2d 754, 758 (10th Cir. 1987).  The court is not

4

to reweigh evidence, evaluate credibility, or substitute its judgment for that of the Commission. <u>Fiumara</u>, 889 at 257.

Discussion

The court first notes that petitioner has in a real sense obtained the relief sought in this action. Petitioner asked for the Notice of Action dated April 19, 2003, to be set aside, and to have a new hearing before the Commission. For reasons not anticipated by petitioner when he filed his petition, the Commission voided that Notice of Action and reopened its consideration of petitioner's parole to conduct a rehearing to consider new adverse information. Significantly, petitioner did not amend or supplement his petition to allege any specific constitutional violation by the Commission concerning the reopened proceeding or in the Notice of Action issued on January 5, 2005.[6]

Nonetheless, respondents maintain this action is not moot. If the January 5, 2005, Notice of Action is read as voiding only the presumptive re-parole date in the Notice of Action dated April 19, 2003, petitioner's allegations of constitutional error in the application of Commission guidelines and in the setting of re-parole or reconsideration outside the parole guidelines arguably remain issues for judicial review. Thus to any extent this action was not rendered moot by the Notice of Action dated January 5, 2005, the

---

[6]Petitioner did file a motion for emergency injunctive relief related to the discovery of the new adverse information, alleging he had been placed in solitary confinement with little or no access to his legal materials in retaliation for his filing of the instant habeas action. The court denied petitioner's request for a temporary restraining order or preliminary injunction. Notwithstanding petitioner's claim of an exemplary prison record, the court found no showing had been made to warrant intervention in the Bureau of Prisons's reassessment of the security threat petitioner posed if he continued in the general population.

5

court considers the merits of these claims.

*Ex Post Facto*

Petitioner first contends he was entitled to application of D.C. Code in effect at the time of his offenses, and argues the Commission's application of its own guidelines violated the Ex Post Facto Clause. The court finds no merit in this contention.

The Ex Post Facto Clause, U.S. Const. Art I, § 10, cl.1, bars in part the retroactive operation of enactments which increase the punishment for a crime after it has been committed. Garner v. Jones, 529 U.S. 244, 249 (2000). This can include retroactive changes in laws governing parole. Id. When a law "does not by its own terms show a significant risk" of increased punishment, a prisoner "must demonstrate, by evidence drawn form the rule's practical implementation...that is retroactive application will result in a longer period of incarceration than under the earlier rule." Id. at 255.

The D.C. Board transferred its jurisdiction over parole issues concerning District of Columbia Code offenders to the Commission, and federal regulations direct that "[e]ach decision to grant or deny reparole shall be made by reference to the Commission's reparole guidelines at § 2.21." 28 C.F.R. § 2.87. The "decided weight of authority is that guidelines of this sort, being guidelines only, are not subject to the ex post facto prohibition." Resnick v. United States Parole Comm'n, 835 F.2d 1297, 1301 (10th Cir. 1987). Also, courts have recognized that the District of Columbia's adoption of parole guidelines after petitioner's convictions did not violate the Ex Post Facto Clause. See e.g., Warren v. United States Parole Comm'n, 659 F.2d 183 (D.C.Cir. 1981),

6

*cert. denied*, 455 U.S. 950 (1982).

Contrary to petitioner's underlying argument, the Ex Post Facto Clause does not guarantee that the law at the time one commits a crime as forever being annexed to the sentence imposed. Id. at 184. The Supreme Court has explained that "the controlling inquiry is not whether the law is retroactive, but whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Henderson v. Scott, 260 F.3d 1213, 1216 (10th Cir. 2001)(quotation marks and citations omitted), *cert. denied,* 535 U.S. 1063 (2002). Thus petitioner's bare reliance on the retroactive application of later promulgated parole and re-parole guidelines is insufficient. Moreover, petitioner's claim that the D.C. Board's exercise of its discretion would have resulted in a more lenient decision regarding petitioner's release on parole is speculative at best, and fails to demonstrate that the Commission's application of the guidelines subjected petitioner to any significant risk of prolonging his incarceration.

*Guideline Departure*

Petitioner next argues that no good cause or rational basis existed for the Commission's decision on April 19, 2003, to set petitioner's presumptive re-parole date after 72 months, outside the 48-60 month guideline range determined by the Commission at that time.

As already noted, the Commission voided that 72 month departure presumptive parole date. After consideration of new adverse information concerning the extent of the threat petitioner posed to the safety of his now ex-wife, the Commission made no change to petitioner's severity rating or salient factor risk category, and

7

cited the same information for departure as in the December 19, 2003, Notice of Action.  It further stated that additional adverse information found in his case file subsequent to the earlier hearing led them to believe that if released, petitioner would pose a serious risk to his former wife and her family.[7]  Petitioner has not alleged any specific error by the Commission in these additional findings or in the conclusion drawn therefrom.

Petitioner generally claims, however, that departure from the guidelines was not warranted because the Commission should not have considered misconduct unsupported by a criminal conviction.  There is no legal support for such a claim.

The guidelines are not mandatory.  Paroling authorities retain discretion to go outside parole guidelines.  Case law in the District of Columbia prior to petitioner's initial release on parole recognized that the particular circumstances of a prisoner's history may warrant a decision which exceeds the guidelines.  <u>Ellis v. District of Columbia</u>, 84 F.3d 1413, 1419-20 (D.C.Cir. 1996).  Likewise, the Commission's re-parole guidelines authorize the consideration of "all available and relevant information concerning the prisoner's conduct while on parole...[including] any new information concerning criminal or administrative violations of parole presented to the Commission for the first time following the conclusion of a revocation proceeding that resulted in the

---

[7]The Notice of Action dated January 5, 2005, stated: "[T]he violent attacks on your former wife/victim were much more serious than previously thought.  Your violation behavior is aggravated by testimony of your former wife to the commission on July 13, 2004 that you have threatened to kill her as well as her entire family.  Further, the victim reports that you twice tried to strangle her and she believed you intended to murder her but due to her struggle she was able to survive."

8

revocation of parole and the return of the offender to prison." 28 C.F.R. § 2.81(d).

It also is well settled that "'[p]aroling authorities are not limited to consideration of formally adjudicated crimes in determining the likelihood of a prisoner's success, if released on parole.'" Robinson v. Hadden, 723 F.2d 59, 62 (10th Cir. 1983)(*quotation marks and citation* omitted), *cert. denied*, 466 U.S. 906 (1984). Thus the Commission "may consider dismissed counts of an indictment, hearsay evidence, and allegations of criminal activity for which the prisoner has not even been charged." Maddox v. United States Parole Commission, 821 F.2d 997, 999 (5th Cir. 1987). *See also* Gometz v. U.S. Parole Comm'n, 294 F.3d 1256, 1261 (10th Cir. 2000)(Commission can make independent findings of new criminal behavior and can consider unadjudicated offenses).

Accordingly, the Commission's consideration of petitioner's assaultive and stalking behavior towards his ex-wife was appropriate, even though related criminal charges against petitioner had been dismissed. This behavior clearly provided a rational basis for the Commission's decision in April 2003 to set a presumptive parole date beyond the guideline range indicated by the guidelines. Likewise, the adverse information later discovered and not challenged by petitioner clearly provided a rational basis for the Commission's even greater departure from the guidelines in the Notice of Action dated January 5, 2005.

*Double Counting*

Finally, petitioner claims the Commission abused its discretion to use the same factors to both calculate his guideline range and to depart from the guidelines to set a 72 month reconsideration date.

9

Petitioner directs his "double counting" claim at the Commission's consideration of petitioner's assault of his wife with a cane, as stated in the Notice of Action dated December 19, 2003.  However, the Commission voided that 72 month departure date and replaced it with a 15 year departure date that petitioner does not specifically challenge.

To the extent petitioner's "double counting" claim is directed at the Commission's use of information in his case to both set the appropriate guideline range and to consider whether a departure from the guideline range was warranted, the court finds no merit to this claim.

Double-counting occurs when the Commission justifies a decision beyond the guidelines by relying on the factors for calculating offense severity under the guidelines."  Kell v. United States Parole Comm'n, 26 F.3d 1016, 1020 (10th Cir. 1994).  However, no "double counting" occurs when information is used to make two distinct determinations.  See Hall v. Henderson, 672 A.2d. 1047, 1056 (D.C.  1996).

In the present case, the factors used to justify departure from the guideline range were not the same factors used to calculate petitioner's severity rating.  The Commission departed from its guidelines based on the extent, nature, repetition, and timing of petitioner's assaultive and threatening behavior which was not adequately taken into consideration by the calculation of petitioner's guideline range.  There was no abuse of the Commission's discretion to consider this information in setting petitioner's guideline range and in determining petitioner's risk to the public safety if released according to the guidelines.  See

*e.g.,* <u>Allen v. Hadden</u>, 738 F.2d 1102, 1104-05 (10th Cir. 1984)(an obvious relationship between the factors does not mean they are the same).

## Conclusion

Accordingly, the court finds no ex post facto violation in the Commission's application of re-parole guidelines. It is settled law that a decision may exceed the guidelines when the circumstances of an offender warrant such treatment, and a rational basis exists in the record for the Commission's decision to exceed the guidelines in petitioner's case. To the extent petitioner's allegations of constitutional error concerning the Notice of Action dated December 19, 2003, were not rendered moot by the Notice of Action dated January 5, 2005, the court concludes petitioner is entitled to no relief under 28 U.S.C. § 2241 because petitioner has not demonstrated arbitrary and capricious action or abuse of discretion by the Commission.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is denied.

DATED: This 26th day of March 2007, at Topeka, Kansas.

 S/ Richard D. Rogers  
RICHARD D. ROGERS  
United States District Judge